IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM SCOTT REDINGER,<br>        Plaintiff | )<br>)<br>)   C.A. No. 21-12 Erie |
| v. | )<br>)<br>)   District Judge Susan Paradise Baxter |
| PARKER-HANIFIN CORPORATION,<br>successor-in-interest by merger to<br>LORD CORPORATION,<br>        Defendant. | )<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

**I.**     **INTRODUCTION**

    **A.**     **Relevant Procedural History**

Plaintiff, an adult resident of Erie, Pennsylvania, initiated this action by filing a complaint on January 26, 2021, against Defendant Parker-Hanifin Corporation ("Parker-Hanifin"), a corporation organized and existing under the laws of the state of Ohio, with a principal office in Cleveland, Ohio. Plaintiff subsequently filed an amended complaint on March 22, 2001 [ECF No. 6], which is the operative pleading in this case. Defendant is the successor-in-interest to LORD Corporation ("LORD"), Plaintiff's former employer, by virtue of a merger that was finalized between the two companies on October 29, 2019. (For ease of reference, Defendant will be referred to as "LORD" unless otherwise indicated).

Plaintiff alleges claims of constructive fraud, breach of fiduciary duty, state securities fraud, and breach of contract against Defendant, arising from Defendant's alleged failure to comply with the terms of a Stock Purchase Agreement entered into between Plaintiff and LORD in May 2004. As relief for his claims, Plaintiff requests compensatory damages in the amount of

1

$ 1,343,545.48, plus interest, as well as punitive damages for his constructive fraud claim.

Presently before the Court is Defendant's motion to dismiss amended complaint [ECF No. 7] for failure to state a claim upon which relief may be granted. In particular, Defendant argues that Plaintiff's tort claims of constructive fraud and breach of fiduciary duty (1) are barred by North Carolina's[1] economic loss rule; (2) fail to state a claim because no fiduciary duty exists; and (3) Plaintiff cannot satisfy the elements of either claim, in any event. In addition, Defendant contends that Plaintiff's claim under Section 78A-56(b) of the North Carolina Securities Act fails to satisfy the elements of that section, and Plaintiff's breach of contract claim fails to establish that a breach occurred. Plaintiff has filed a brief in opposition to Defendant's motion [ECF No. 12], disputing the alleged deficiencies raised in Defendant's motion, and Defendant subsequently filed a memorandum in reply to Plaintiff's opposition brief [ECF No. 21]. This matter is now ripe for consideration.

**B.    Relevant Factual History**[2]

Plaintiff was employed with LORD for nearly thirty years before he retired on October 30, 2017 (ECF No. 6, Amended Complaint, at ¶ 9). Because he was a key executive employee, Plaintiff and LORD entered a Stock Purchase Agreement in May 2004 ("the Agreement") [ECF No. 6-2], which gave Plaintiff the opportunity to purchase shares of LORD's Class B stock during his employment. Prior to his retirement, Plaintiff accumulated 742 restricted Class B shares of LORD capital stock under the terms of the Agreement (ECF No. 6, at ¶ 10). The Agreement provides that, upon Plaintiff's termination or retirement, Plaintiff is required to sell,

---

[1] The parties agree that, according to its terms, the Stock Purchase Agreement at issue shall be governed by, and construed and enforced in accordance with, the laws of the State of North Carolina.

[2] The Court accepts as true all well-pleaded allegations of the Amended Complaint, as is required for purposes of determining Defendant's motion.

and LORD is obligated to purchase, all of Plaintiff's Class B shares according to the option chosen by Plaintiff regarding the timing and mechanics of the stock repurchase. (ECF No. 6-2, at Section 2(a)).

After his separation, on November 20, 2017, Plaintiff executed an "Election for Repurchase of LORD Corporation Class B Restricted Stock" (the "Election"), in which Plaintiff selected "Option 2," indicating his desire to have his shares repurchased on a pro rata basis over a period of five years. [ECF No. 6, at ¶ 11; ECF No. 6-1]. In the "comments" section provided on the Election form, Plaintiff added, "I strongly prefer successive closings to be each December after dividends payment" (Id.). The Election form also contained the following Acknowledgements:

> I understand and agree that the Restated Stock Purchase Agreement with the Corporation shall govern. I understand that in the event I select Options 1 or 2, **successive closings shall be no later than the anniversary of the initial closing.**

(Id.) (emphasis added).

The initial closing occurred on December 14, 2017, at which time LORD repurchased 148 shares of Plaintiff's Class B stock (ECF No. 6, at ¶ 13). In early 2018, Plaintiff informed LORD's General Counsel, Jon Oeschle ("Oeschle"), and LORD employee, Gene Tomczak, that he would like to redeem the next 20% of his Class B shares in December 2018, consistent with his comment on the Election form (Id. at ¶ 19). In response to his request to redeem his shares in December, Plaintiff received an email on February 12, 2018, from Denise Austin ("Austin"), LORD's Shareholder Relations Specialist, who advised Plaintiff that LORD had a consistent practice of making recurring redemptions "among all retirees" during the months of March and April (Id. at ¶ 20). Austin followed up with an email on April 16, 2018, asking Plaintiff to designate which of his stock certificates he would like to have redeemed, to which Plaintiff

3

responded that he had "no plans to redeem shares until the anniversary of [his] previous redemption." (Id. at ¶¶ 21, 22). Nonetheless, Oeschle telephoned Plaintiff and informed him of LORD's intent to redeem his shares in April (Id. at ¶ 23).

Approximately one year later, on or about March 6, 2019, Plaintiff saw a newspaper article reporting that LORD was exploring the possibility of selling the company (Id. at ¶ 24). Plaintiff alleges that he "broached the issue" with Austin, and then received an email response from Oeschle on March 11, 2019, stating that "the company is not commenting on the speculation in the [news] article" (Id. at ¶ 25). Plaintiff and Oeschle then exchanged a series of emails from March 11 through April 5, 2019, regarding Plaintiff's follow-up question as to whether the repurchase of Plaintiff's stock would be halted if he was rehired by LORD as a full-time employee (Id. at ¶¶ 26-30); however, he was informed days later that he would not be rehired (Id. at ¶ 31). Thereafter, on April 17, 2019, LORD redeemed 148 shares of Plaintiff's Class B stock, despite Plaintiff's stated desire to have the redemption occur in December (Id).

Only nine days later, on April 26, 2019, Parker-Hanifin "entered into a definitive agreement to acquire LORD ... subject to customary closing conditions, including receipt of applicable regulatory controls" (Id. at ¶ 32). Plaintiff alleges that, "At no point prior to April 26, 2019" did any LORD employee or representative inform him of the pending merger with Parker-Hanifin, "nor did LORD abstain from redeeming [Plaintiff's] shares in light of the merger prior to April 26, 2019" (Id. at ¶ 33).

## II.   DISCUSSION

### A.   Constructive Fraud and Breach of Fiduciary Duty

Counts I and II of the amended complaint assert tort claims of constructive fraud and breach of fiduciary duty. Under North Carolina law, each of these claims requires the plaintiff to

allege facts showing a fiduciary relationship between the parties. See King v. Bryant, 369 N.C. 451, 465 n.3, 795 S.E. 2d 340, 349 n.3 (2017) ("the elements of a claim for breach of a fiduciary relationship are the same as those for constructive fraud"); Merrell v. Smith, 2020 WL 7614053, at *8 (N.C. Super. Ct. Dec. 22, 2020) ("both claims rest on the alleged existence of a fiduciary relationship"). Here, both claims are premised on Plaintiff's allegations that the officers of LORD owed him a fiduciary duty in connection with the repurchase of his shares in the corporation (ECF No. 6 at ¶¶ 46-50, 60-63). And indeed, as Plaintiff notes, it is well-settled that the officers of a corporation owe a fiduciary duty to the corporation's shareholders. See, e.g., IRA for benefit of Oppenheimer v. Brenner Cos., 107 N.C. App. 16, 419 S.E.2d 354, *disc. review* denied 332 N.C. 666, 424 S.E.2d 401 (1992). However, the officers of LORD are not parties to this action. Rather, the only Defendant named in this case is the corporate entity itself.

Courts have commonly recognized that a corporation does not owe a fiduciary duty to its shareholders. See, e.g., Radol v. Thomas, 772 F.2d 244, 258 (6th Cir. 1985) ("There is not, and could not conceptually be any authority that a corporation as an entity has a fiduciary duty to its shareholders"); Rigby v. Fire-Cured Tobacco Co-op, 755 S.E.2d 915, 925 (Ga. App. 2014) ("a corporation does not have a fiduciary relationship with stockholders"); Hyman v. New York Stock Exchange, Inc., 46 A.D.3d 335, 337, 848 N.Y.S.2d 51, 53 (Dec. 18, 2007) ("it is well settled that a corporation does not owe fiduciary duties to its members or shareholders"); In re Dataproducts Corp. Shareholders Litig., 17 Del. J. Corp. L. 1159, 1170 (Del. Ch. Aug. 22, 1991) ("a corporation *qua* corporate entity is not a fiduciary of, and thus cannot owe a fiduciary duty to, its shareholders"); Merrell v. Smith, 2020 WL 7641053, at *8 (N.C. Super. Dec. 22, 2020) (agreeing that, "in accordance with well-established corporate law principles, [an LLC] did not owe [a fiduciary duty] to its members"). Cf. Talisman Software, Systems & Services, Inc. v.

5

Atkins, 2015 WL 7356336, at *5 (N.C. Super. Nov. 18, 2015) ("In North Carolina, while directors and officers of a corporation generally owe a fiduciary duty to the corporation, a corporation does not owe a reciprocal fiduciary duty to its directors and officers") (internal citations omitted).

Nonetheless, Plaintiff attempts to get around this commonly recognized legal principle by arguing that LORD's officers acted within their authority as agents of LORD, their principal, and, thus, LORD is vicariously liable for its officers' alleged breach of their fiduciary relationship with Plaintiff under a theory of *respondeat superior*. This argument is based upon a legal fallacy. As LORD points out, an officer's fiduciary obligations to a shareholder are derivative of the officer's fiduciary duties to the corporation, which is wholly owned by its shareholders. "It would be an analytical anomaly, therefore, to treat corporate directors [and officers] as *agents* of the corporation when they are acting as *fiduciaries* of the stockholders in managing the business and affairs of the corporation. Holding the corporation vicariously liable for [its directors' or officers'] breach of a fiduciary duty 'would be flatly inconsistent with the rationale of vicarious liability since it would shift the cost of the directors' [or officers'] breach from the directors [or officers] to the corporation and hence to the shareholders, the class harmed by the breach.'" Arnold v. Society for Sav. Bancorp., Inc., 678 A.2d 533, 539-40 (S. Ct. Del. 1996), quoting Radol v. Thomas, 772 F.2d 244, 258-259 (6th Cir. 1985).

Because the Court finds that Plaintiff is unable to establish that LORD owed Plaintiff a fiduciary duty, either directly or vicariously, Plaintiff's claims of constructive fraud and breach

of fiduciary duty will be dismissed.[3]

### B. North Carolina Securities Act Claim

In Count III of his amended complaint, Plaintiff alleges, *inter alia*, as follows:

> 75. Prior to selling his Class B shares to LORD, [Plaintiff] did not know nor could have reasonably known of the pending sale of LORD to PARKER-HANIFIN or that representatives of LORD were omitting from [Plaintiff] information of the sale of LORD to PARKER-HANIFIN.
>
> 76. Due to LORD's omission of information from [Plaintiff] of the sale of LORD to PARKER-HANIFIN prior to the sale/redemption of [Plaintiff's] Class B shares on April 17, 2019, LORD violated Section 78A-56(b) of the North Carolina Securities Act.

(ECF No. 6, at ¶¶ 75-76).

Section 78A-56(b) of the North Carolina Securities Act (the "NCSA") provides that a defendant may be civilly liable where (1) "the plaintiff can show the defendant ... (b) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the [plaintiff] not knowing of the untruth or omission)," and (2) "the defendant cannot show that he did not know, or in the exercise of reasonable care could not have known, of the untruth or omission." N.C. Gen. Stat. § 78A-56(b) (2003).

LORD moves to dismiss this claim, arguing, *inter alia*, that Plaintiff has failed to establish that he was induced to sell his stock by any misleading statement or omission. The Court agrees.

As LORD emphasizes, any alleged misinformation or omission regarding Parker-Hanifin's potential purchase of LORD had no bearing on Plaintiff's decision to sell back his

---

[3] As a result, LORD's additional grounds for dismissing Plaintiff's constructive fraud and breach of fiduciary claims will not be addressed.

Class B shares to LORD. Rather, Plaintiff contractually agreed to sell back his shares to LORD upon his termination or retirement, pursuant to the terms of the parties' Stock Purchase Agreement entered in May 2004. After separating from his employment with LORD on November 20, 2017, Plaintiff executed the Election, pursuant to which he agreed to sell back his shares to LORD, on a pro rata basis, over a period of five years. The first two blocks of Plaintiff's shares were repurchased by LORD in December 2017 and April 2018. Thus, Plaintiff's agreement and obligation to sell back his Class B shares to LORD were established well before the events of April 2019 upon which Plaintiff's claim is based.

Moreover, North Carolina courts have recognized that purchasers of securities like LORD's are under no duty to disclose to a seller matters like a pending sale or merger, absent a specific duty to do so. See, e.g., Worley v. Moore, 2018 WL 5795741, at *7 (N.C. Super. Nov. 2, 2018), citing Chiarella v. United States, 445 U.S. 222, 229 (1980) ("a purchaser of stock who has no duty to a prospective seller because he is neither an insider nor a fiduciary has been held to have no obligation to reveal material facts"). Indeed, "[a]s a general matter, the NCSA does not impose a duty to disclose; rather, liability must be tied to a statement which was untrue, or which was made misleading by omissions…." McGuire v. LORD Corporation, 2020 WL 698562, at *7 (N.C. Super. Feb. 11, 2020) (internal citations omitted). Accordingly, only where a seller elects to make a statement regarding a security does the NCSA require that the statement contain sufficient material information to not be misleading. Aldridge v Metropolitan Life Ins. Co., 2019 WL 7374878, at *39 (N.C. Super. Dec. 31, 2019).

Here, although Plaintiff's NCSA claim refers to LORD's "omission of information," it is apparent that the claim is based specifically on Plaintiff's allegation that "At no point prior to April 26, 2019, did any employee, executive or representative of LORD disclose to [Plaintiff] the

8

pending merger of LORD with PARKER-HANIFIN, nor did LORD abstain from redeeming [Plaintiff's] shares in light of the merger prior to April 26, 2019" (ECF No. 6, at ¶ 33 ). Thus, in actuality, Plaintiff's NCSA claim is based on LORD's failure to disclose information regarding its potential merger with Parker-Hanifin, rather than an omission. Indeed, Plaintiff has not alleged that LORD made any affirmative statement to Plaintiff prior to the redemption of his shares on April 17, 2019, that was made misleading by a material omission of information. As a result, Plaintiff has failed to state a cognizable claim under the NCSA upon which relief may be granted and such claim will be dismissed.

### C.   **Breach of Contract**

Plaintiff claims that LORD breached the terms of the Stock Purchase Agreement by failing to pay to him the proper fair market value of his Class B shares on April 17, 2019. This claim is based upon Plaintiff's allegation that the purchase of his shares on April 17, 2019 "occurred concurrently with or within 90 days of the Corporate Event where PARKER-HANIFIN entered into a definitive agreement to acquire LORD for approximately $3.675 billion in cash a mere nine days later on April 26, 2019" (ECF No. 6, at ¶ 82). As a result, Plaintiff asserts that LORD was contractually obligated to pay him the greater fair market value of his shares arising from Parker-Hanifin's acquisition of LORD, rather than the fair market value of his shares at the end of the most recent fiscal year (Id. at ¶¶ 83-84).

LORD has moved to dismiss this claim, arguing that it is based upon both a misunderstanding of the term "Corporate Event" as defined in the Stock Purchase Agreement, and a misreading of the timing requirements set forth in the Agreement. As LORD observes, the Stock Purchase Agreement defines a "Corporate Event" as including a reorganization, merger or consolidation, or a sale of fifty percent (50%) or more of the value of LORD's assets (ECF No.

6, at ¶ 80; ECF No. 6-2, at pp. 5-6). Notably, the definition does not include an *agreement* to reorganize, merge, consolidate, or sell, but only refers to the consummation of the transaction. Under applicable Pennsylvania law,[4] a merger becomes effective upon the filing of a statement of merger with the Pennsylvania Department of State. 15 Pa. C.S.A. § 335. Here, the merger between LORD and Parker-Hanifin was not effective until October 29, 2019 (ECF No. 7-2).[5]

Thus, under the Stock Purchase Agreement, the Corporate Event at issue occurred on October 29, 2019, not April 26, 2019, as Plaintiff has alleged. This fact essentially nullifies Plaintiff's claim that the purchase of his Class B shares on April 17, 2019 occurred "concurrently with" the Corporate Event of Parker-Hanifin's acquisition of LORD. Consequently, Plaintiff has failed to show that LORD breached the terms of the Stock Purchase Agreement in determining the fair market value of his Class B shares on April 17, 2019, and his breach of contract claim will be dismissed, accordingly

An appropriate Order follows.

---

[4] LORD is a Pennsylvania corporation (ECF No. 6, at ¶ 4), and North Carolina courts apply the law of the state of incorporation to determine when a merger is consummated. See Worley v. Moore, 2017 WL 871198, at *20 (N.C. Super. Feb. 28, 2017).

[5] Plaintiff's argument in his reply brief that Parker-Hanifin's agreement to acquire LORD on April 26, 2019, qualified as a "sale" under Section 78A-2(8)(a) of the NCSA (ECF No. 12, at p. 23) is a "red herring," as the NCSA's definition of a "sale" of securities has no relevance to a breach of contract claim, which is governed by the terms of the parties' agreement, and is not applicable in any event because, as noted, Pennsylvania law applies to determine the effective date of the acquisition.